## WILLIAMS v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department.   October 18, 1898.)

1. DEFECTIVE SIDEWALKS—NOTICE TO CITY.
   A sidewalk having been out of repair a considerable length of time, so that by reasonable diligence the city could have notice thereof, such notice may be imputed to it.

2. PERSONAL INJURIES—REJECTION OF MEDICAL ADVICE.
   Recovery by one from a city for a hernia caused by a fall on defective sidewalk is not affected by the fact that he made a mistake in not immediately undergoing an operation, as advised by a physician, if his conduct was that of a reasonably prudent man.

Appeal from trial term, Kings county.

Action by William Williams against the city of Brooklyn.   From a judgment on a verdict of $3,500 for plaintiff, and from an order denying a new trial, defendant appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Almet F. Jenks (R. Percy Chittenden on the brief), for appellant.
James C. Cropsey, for respondent.

GOODRICH, P. J.   In the evening of May 20, 1896, the plaintiff, a man 56 years old, in company with a friend, was walking southerly along the westerly sidewalk of Hamilton avenue, Brooklyn, near the Gowanus Canal Bridge, when he stumbled over a large flag stone, 19 inches wide, which was near the middle of, and several inches higher than, the sidewalk.   It was an isolated stone, and appears to have been the relic of some former continuous sidewalk flagging, the nearest flagstone being several feet distant.   Evidently the earth had washed away, or had been worn away, from the stone, during a considerable period.   The stone stood up above the dirt sidewalk at a height variously estimated by the witnesses.   The plaintiff contends that this height was from 5 to 7 inches, while the defendant seems to concede that the height at the place where the plaintiff stumbled was about 3½ inches.   This concession was based on the evidence of a civil engineer in the service of the city, who measured the stone in January, 1898, nearly two years after the accident.   There is evidence tending to show that the plaintiff's foot caught under the stone, that he tripped, and fell violently on his face, and fainted.   On recovering consciousness, he had a violent pain in his head, and discovered that there was a bunch as large as his fist above his right groin, and that he had sprained his ankle, and skinned his knee.   He was taken in an ambulance to the Long Island College Hospital, where he remained 10 days, and then had a truss applied to sustain the rupture above the groin.   He was attended by his own physician at home,

but, as the pain and trouble increased, on January 4, 1897, he re-
turned, by his physician's advice, to the hospital, where an operation
for hernia was performed, and where he remained till March, when
he was discharged.    At the time of the accident the plaintiff weighed
210 pounds, and when he finally left the hospital after the operation
he weighed 124 pounds.    The court refused the defendant's motion
to dismiss the complaint, and submitted the case to the jury, which
found a verdict of $3,500 for the plaintiff.    From the judgment en-
tered on this verdict, and an order denying a motion for a new trial,
the defendant appeals.

We must assume, under the charge of the court, that the jury
found that the plaintiff was not guilty of contributory negligence, and
we are therefore brought to the question as to the city's liability by
reason of the condition of the place in question.    There was evidence
that two persons had fallen over the stone in March, 1896, and appar-
ently another in 1894, and that the attention of a policeman on duty
in the neighborhood was called to the condition of the walk in May,
1894.    Taken in connection with the other evidence, there was a fair
question for the jury as to the length of time the condition of things
as it was at the time of the accident had existed, and whether the city
had constructive notice of the condition, or ought to have known of
it.    The sidewalk is in a populous thoroughfare, and is much used
by the public.    It was held, in Farley v. City of New York, 152 N. Y.
222, 46 N. E. 506, that the city was chargeable with the knowledge of
its policemen on duty, after the lapse of a reasonable time to enable
information to be communicated by them to their superiors.    A simi-
lar doctrine was announced in Rehberg v. Mayor, etc., 91 N. Y. 137.
In addition to this, it was held, in Pomfrey v. Village of Saratoga
Springs, 104 N. Y. 459, 11 N. E. 43, that actual notice to the proper
municipal authorities of a defect is not necessary to charge the munici-
pality with negligence; that the authorities owe to the public the
duty of active vigilance; and, when a street or sidewalk has been out
of repair for any considerable length of time, so that by reasonable
diligence they could have notice of the defect, such notice may be im-
puted to them.    In the present case the court instructed the jury
that the city was not an insurer of the safety of the streets, but was
required to exercise reasonable care, measured by the necessities of
the particular locality, and submitted to them the question whether
the walk was or was not reasonably safe, and, if they found it unsafe,
whether it had been so long enough for the city authorities to have
discovered it if they exercised reasonable care in looking after the
safety of the streets.    This charge was correct, and the verdict set-
tles both questions in favor of the plaintiff.

The learned corporation counsel contends that the jury awarded
excessive damages.    The court instructed the jury that there could
be "no recovery for permanent injury."    This leaves us to inquire
only as to temporary suffering, loss of wages, and medical attendance.
There was some evidence tending to show that the hernia antedated
the accident, but the court charged that, unless the rupture was occa-
sioned at the time of and by the accident, there could be no recovery
therefor.    It is also contended that the plaintiff, the next morning

after the accident, was advised by the hospital surgeons to have an operation for hernia performed, and that he obstinately and unreasonably refused to do so. The plaintiff admits that he was advised to undergo the operation, and made a mistake in not accepting the advice; but the court, at the request of the defendant, charged:

"That the plaintiff was bound to use ordinary care to cure and restore himself, and to use such methods reasonably within his reach as would make his damage as small as possible. The plaintiff cannot recklessly enhance his injury, and charge it to the defendant. The Court: I will charge that. Mr. Chittenden: Also the thirty-fourth. The Court: You mean, if the jury believe that the plaintiff declined to act upon the advice of the house surgeon, and declined to submit to an operation for the radical cure of his hernia, the defendant is not chargeable with the consequence of his refusal? I so charge."

This was a statement of the law more favorable to the defendant than was needful, and of this the defendant may not predicate error. The plaintiff was not required to submit blindly to professional advice. He was entitled and bound to exercise reasonable judgment, and if his conduct was that of a reasonably prudent man he was within his rights in refusing to submit to an operation, and cannot be charged with negligence in that respect. This question was involved in the verdict, and has been found in favor of the plaintiff. The plaintiff was attended by a physician more than 200 times, and there is evidence tending to show that the reasonable value of such services was about $290, and that the plaintiff's earnings averaged $25 a week, much of which had been lost since the accident. Adding to this the pain and suffering which he endured, we do not think the verdict was excessive.

The judgment must be affirmed.

Judgment and order affirmed, with costs. All concur.